**PUBLIC VERSION**

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

NEWTREND USA CO., LTD., STARILLE, LTD., AND NUTRAWAVE CO., LTD.,

Plaintiffs,

v.

UNITED STATES,

Defendant,

and

DEER PARK GLYCINE, LLC,

Defendant-Intervenor.

**COURT NO. 22-347**

**PUBLIC VERSION**

**BUSINESS PROPRIETARY INFORMATION (“BPI”) HAS BEEN REDACTED FROM PAGES 2–7, 11–15, 17–19 AND 22.**

**DEFENDANT-INTERVENOR DEER PARK GLYCINE, LLC’S RESPONSE TO PLAINTIFF’S OPENING COMMENTS IN OPPOSITION TO U.S. CUSTOMS AND BORDER PROTECTION REMAND REDETERMINATION**

David M. Schwartz
Kerem Bilge
**THOMPSON HINE LLP**
1919 M Street, N.W., Suite 700
Washington, DC 20036
(202) 263-4170
(202) 331-8330 (fax)
David.Schwartz@ThompsonHine.com
Kerem.Bilge@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

Dated: June 26, 2024

**PUBLIC VERSION**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. FACTS ........ 1

III. STANDARD OF REVIEW ........ 7

IV. ARGUMENT ........ 9

A. CBP'S REMAND DETERMINATION COMPLIES WITH THE COURT'S REMAND ORDER ........ 9

B. CBP'S REMAND REDETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE ........ 10

*a. PTNNI Was Not Capable of Producing the Glycine It Shipped to the United States During the Investigation Period* ........ 11

*b. Substantial Evidence Supports the Finding that the Origin of the Glycine PTNNI did not Produce but Shipped to the United States is Chinese* ........ 18

*c. The Court Should Uphold CBP's Remand Redetermination* ........ 20

C. CBP DID NOT ENGAGE IN *POST HOC* RATIONALIZATION CONTRARY TO *REGENTS* ........ 20

V. CONCLUSION ........ 23




4869-3137-8121.3

**PUBLIC VERSION**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
38 C.I.T. 727 (2014) ....................8

*Ad Hoc Shrimp Trade Enf't Comm. v. United States*,
632 F. Supp. 3d 1369 (Ct. of Int'l Trade 2023) ....................7

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. Of Governors of Fed. Rsrv. Sys.*,
745 F.2d 677 683-84 (D.C. Cir. 1984)....................7

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States*,
No. 2020-2014, 2021 U.S. App. LEXIS 21386 (Fed. Cir. July 20, 2021)....................8

*Consol. Edison Co. v. NLRB*,
305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938) ....................8

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) ....................8

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
591 U.S. 1 (2020)....................20, 21

*Goldlink Industries Co. v. United States*,
431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ....................9, 20

*INS v. Elias-Zacarias*,
502 U.S. 478 (1992)....................8

*MacLean-Fogg Co. v. United States*,
100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ....................8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....................7

*Nan Ya Plastics Corp. v. United States*,
810 F.3d 1333 (Fed. Cir. 2016)....................16, 17, 18, 19

*Newtrend USA Co., Ltd., et al. v. United States*,
Ct. No. 22-00347 (Ct. Int'l Trade Oct. 20, 2023)....................1

*Nucor Corp. v. United States*,
612 F. Supp. 2d 1264 (Ct. Int'l Trade 2009) ....................8

*Rodriguez v. Dep't Veterans Affairs*,
8 F.4th 1290 (Fed. Cir. 2021) ....................16

*Royal Brush Manufacturing v. United States*,
75 F.4th 1250 (Fed. Cir. 2023) ....................5, 6, 9, 10

*Shandong Huarong Gen. Corp. v. United States*,
159 F. Supp. 2d 714 (Ct. Int'l Trade 2001) ....................8

*SKF USA, Inc. v. United States*,
537 F.3d 1373 (Fed. Cir. 2008)....................8

*Skyview Cabinet USA, Inc. v. United States*,
2023 Ct. Intl. Trade LEXIS 95 (Ct. of Int'l Trade 2023)....................20

*Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube*,
975 F.2d 807 (Fed. Cir. 1992)....................20

**Statutes**

18 U.S.C. § 1905....................9

19 U.S.C. § 1517(a)(3)....................11, 12

19 U.S.C. § 1517(a)(5)....................11

19 U.S.C. § 1517(c)(1)(A) ....................7, 16

19 U.S.C. §§ 1517(c)(1)(A) and (g)(2) ....................7

19 U.S.C. §§ 1517(c) and (f)....................7

**Regulations**

19 C.F.R. § 165.23(c)(1) ....................10

**Administrative Determinations**

*Glycine from India and the People's Republic of China*, 84 Fed. Reg. 29,173
(Dep't of Commerce June 21, 2019) ....................1

*Glycine from the People's Republic of China*, 60 Fed. Reg. 16,115 (Dep't of
Commerce March 29, 1995) ....................1

BUSINESS PROPRIETARY INFORMATION ("BPI")
HAS BEEN REDACTED
FROM PAGES 2–7, 11–15, 17–19 AND 22.

**PUBLIC VERSION**

## I. INTRODUCTION

Pursuant to the Court's scheduling order, Defendant-Intervenor Deer Park Glycine, LLC ("DPG"), a domestic producer of glycine, hereby submits its response to the opening brief of the Plaintiffs Newtrend USA Co. Ltd. ("Newtrend USA"), Starille Ltd. ("Starille"), and Nutrawave Co. Ltd. ("Nutrawave") (collectively "Importers" or "Plaintiffs"), ECF No. 77, concerning the final remand results of U.S. Customs and Border Protection ("CBP") filed in accordance with this Court's decision and remand order in *Newtrend USA Co., Ltd., et al. v. United States*, Ct. No. 22-00347 (Ct. Int'l Trade Oct. 20, 2023), ECF No. 68 ("Remand Order"). *See also* Final Remand Redetermination, Jan. 18, 2024, ECF No. 73 ("Remand Results").

For the reasons detailed here, DPG respectfully requests that the Court sustain CBP's Remand Results and enter judgment for the United States.

## II. FACTS

In 1995 and 2019, respectively, the U.S. Department of Commerce ("Commerce") issued antidumping and countervailing duty orders on glycine from China. *See Glycine from the People's Republic of China*, 60 Fed. Reg. 16,115 (Dep't of Commerce March 29, 1995); *Glycine from India and the People's Republic of China*, 84 Fed. Reg. 29,173 (Dep't of Commerce June 21, 2019). Current applicable antidumping and countervailing duty rates for the Chinese-origin glycine are 155.89 percent and 144.01 percent, respectively. *Id*.

On April 30, 2021, and September 7, 2021, Defendant-Intervenor filed an Enforce and Protect Act ("EAPA") allegation with the CBP, requesting an investigation into whether Nutrawave, Starille, and Newtrend USA imported Chinese-origin glycine into the United States via transshipment through Indonesia. Appx80421, Appx80426, Appx80644. The Defendant-

Intervenor supported the assertion with a market research report dated **[ ]** that showed the glycine production facility of PT Newtrend Nutrition Ingredient ("PTNNI"), an Indonesian affiliate of the China-based Newtrend Group, was not capable of producing glycine as of the date of the report, which was months after PTNNI first began shipping glycine to the United States. Appx90001.

On October 26, 2021, after reviewing the information provided by the Defendant-Intervenor and the Plaintiffs and after conducting additional research, the Trade Remedy Law Enforcement Directorate of CBP's Office of International Trade ("TRLED") determined that there was reasonable suspicion glycine had entered the United States through evasion and applied interim measures against the Plaintiffs. Appx82539.

Between May 3 and May 6, 2022, CBP officials conducted an on-site verification of PTNNI's responses during the investigation. Appx89567. The verification report identified significant discrepancies in PTNNI's responses, production records, and raw material data, and contained other salient observations from the on-site visit, which resulted in a conclusion that "{a}t the time of importation, PTNNI may not have had production capabilities to produce glycine in Indonesia." *Id*.

On July 22, 2022, CBP determined that the Importers evaded the antidumping and countervailing duty orders on *Glycine from China* by "transshipping Chinese glycine through Indonesia because there is substantial evidence that demonstrates the purported Indonesian manufacturer could not have produced the volume of glycine it supplied the Importers." Appx90028. CBP's finding that PTNNI could not have produced the claimed volume of glycine was based on evidence indicating, *inter alia*: (1) PTNNI's facility had not been completed by

its claimed October 2020 production start date (Appx90029); (2) PTNNI did not have all of its production equipment installed by its claimed October 2020 production start date (*id*.); (3) PTNNI did not purchase sufficient raw materials to support its claimed production volumes of glycine (Appx90029-31); and (4) PTNNI did not have a sufficient and educated labor force to support its claimed production. Appx90031-32. CBP also determined that the glycine PTNNI sold to the Importers was Chinese in origin because: (1) Newtrend Group officials and affiliates directly own and control PTNNI and Newtrend USA; (2) Newtrend Group officials and affiliates were directly involved in the businesses of Starille and Nutrawave, helping them find **[ ]** of their customers and lending them significant amounts of money; (3) there was no large-scale supplier of glycine in Indonesia other than PTNNI; (4) Newtrend Food Ingredient (Thailand) Co., Ltd. ("Newtrend Thailand"), a Newtrend Group affiliate, stopped producing glycine in **[ ]**, and there were no glycine imports from Thailand into Indonesia during the POI; (5) trade data and sales reconciliations showed glycine exports from China-based Newtrend Group affiliates to Indonesia; and (6) **[ ]** attempted to sell **[ ]** to the Defendant-Intervenor's market researcher when the market researcher sought Indonesian-made glycine. Appx90033.

On November 30, 2022, the Office of Trade, Regulations and Rulings ("ORR") affirmed CBP's evasion finding. Appx90298. After reviewing the record evidence and the CBP's decision, ORR found "substantial evidence of evasion." Appx90298. In affirming the evasion finding, ORR also rebutted various arguments made by the Plaintiffs in this appeal.

For example, ORR found that the Plaintiffs' submission of various evidence concerning the construction of the PTNNI facility — including (1) an affidavit from Karawang New

Industry City ("KNIC") officials stating that the photograph of the PTNNI factory posted on the KNIC website purporting to show construction progress as of December 2020 was actually taken in November 2020; (2) PTNNI's own photographs documenting the construction of the factory; and (3) an affidavit from the PTNNI Director attesting that construction of the PTNNI facility was completed in October 2020 — "do little to rebut what the photographs elsewhere in the record show." Appx90299. The record evidence showed that: (1) the facility had incomplete walls as of August 2020; (2) the October 2020 picture did not indicate that production equipment had been installed inside the factory yet; and (3) PTNNI's claims of significant finished glycine production in **[ ]** allegedly occurred when **[ ]**. Appx90299-300.

ORR also affirmed TRLED's finding that PTNNI did not procure sufficient methanol or activated carbon to support PTNNI's claimed production. Appx90300-31. Notably, ORR found that PTNNI's claimed methanol consumption rate per kg for intermediate glycine of **[ ]** kg — which was provided by the Plaintiffs in a last-ditch attempt to salvage their case before CBP — was "unrealistically low," given record evidence showing that: (1) PTNNI itself reported a **[ ]** kg methanol consumption rate; (2) CBP calculated a **[ ]** kg methanol consumption rate; and (3) another Indian producer had a methanol consumption rate of **[ ]** kg. Appx90300.

ORR similarly affirmed TRLED's finding of an insufficient labor force at the PTNNI facility at a time when PTNNI claimed significant production volumes. The record evidence showed that PTNNI "relied on the expertise of former Thai and Chinese workers when the factory was first operational." Appx90301. The evidence also showed, however, that "only

**[ ]** Chinese workers and **[ ]** Thai workers had arrived in Indonesia as of October 2020 when PTNNI claims production began", and all these employees had **[ ]** and were not **[ ]**. Appx90301.

ORR similarly affirmed TRLED's finding that the glycine shipped by PTNNI to the Importers was Chinese in origin because of (1) the intertwined relationship between the China-based Newtrend Group, which **[ ]**, PTNNI and the Plaintiffs, (2) the investigative report revealing that **[ ]**, and (3) public trade data showing a significant increase in glycine shipments from China into Indonesia. Appx90302.

In response to the Plaintiffs' various arguments concerning minor discrepancies in the CBP's evasion finding, ORR determined that none of "these issues {is} particularly probative on the ultimate question of whether PTNNI was capable of producing glycine on the claimed production start date of October 2020" and that "the weight of the evidence supports a conclusion that PTNNI could not have produced all of the glycine that was shipped to the United States and claimed to be of Indonesian origin." Appx90304.

After the Plaintiffs filed their complaint here contesting the affirmative determination of evasion and filed their motion for judgment on the administrative record, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") issued its decision in *Royal Brush Manufacturing v. United States*, 75 F.4th 1250 (Fed. Cir. 2023), which addressed various due process arguments made by the Plaintiffs in their brief. ECF Nos. 2 and 57. Without confessing error, the United States filed a motion for a voluntary remand, ECF No. 62, which the Court

granted. Appx1-10. In the remand order, the Court ordered CBP to "correct any errors required by *Royal Brush*; and the plaintiffs may make any arguments they wish about what *Royal Brush*, due process generally, or Customs' regulations require." Appx10.

In the remand redetermination, CBP reopened the administrative record, granted the parties access to confidential information, and allowed the parties to submit rebuttal information and make written arguments as to information that parties did not have access to during the investigation. Appx90905-90906. CBP's remand determination also addressed various arguments made by the parties in their comments on the draft remand determination. Appx90917-90935.

On remand, the Defendant-Intervenor placed additional evidence further identifying the discrepancies in the responses provided by PTNNI and the Plaintiffs during the investigation. For example, the Defendant-Intervenor placed information on the record indicating that **[ ]**, PTNNI's primary supplier of raw materials, received **[ ]** kg of "amino acids" from China only two months after PTNNI allegedly began glycine production, indicating that "**[ ]**, with a history of receiving shipments on PTNNI's behalf, likely received shipments of Chinese glycine and imported them into Indonesia, supporting CBP's determination of evasion." Appx90914. Further, the trade data showed that a China-based Newtrend Group affiliate shipped significant volumes of glycine from China to Indonesia, contrary to the sales reconciliations provided by PTNNI during the investigation, resulting in CBP's conclusion that sales reconciliations were "incomplete and unreliable." Appx90915. The Defendant-Intervenor also submitted evidence on remand showing that it was impossible to obtain a visa to enter Indonesia between March 2020 and October 2020.

Appx90917. This information contradicted PTNNI's statements during the investigation indicating that its Chinese employees arrived in Indonesia on **[ ]**. *Id.* Hao Wang, the son of the president of Newtrend Group, also confirmed that he could not travel to Indonesia until "just a few weeks before verification" in May 2022 due to COVID-19 restrictions. Appx90916-90917.

Based on the record evidence and additional inconsistencies identified on remand, CBP continued to find that there was substantial evidence supporting the findings that PTNNI did not produce all the glycine it sold to the Importers during the period of investigation and that the origin of the glycine PTNNI did not produce but sold to the Importers was Chinese. Appx90934.

## III. STANDARD OF REVIEW

Under the EAPA statute, the CBP "shall make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered into the customs territory of the United States through evasion." 19 U.S.C. § 1517(c)(1)(A). This Court reviews the CBP's evasion determination for compliance with all procedures under 19 U.S.C. §§ 1517(c) and (f) and will hold unlawful "any determination, finding, or conclusion {that} is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. §§ 1517(c)(1)(A) and (g)(2). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Both standards, however, "require an assessment based on a reasonableness standard." *Ad Hoc Shrimp Trade Enf't Comm. v. United States*, 632 F. Supp. 3d 1369, 1374 (Ct. of Int'l Trade 2023) (citing *Ass'n of Data*

*Processing Serv. Orgs., Inc. v. Bd. Of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677 683-84 (D.C. Cir. 1984)).

In remand proceedings, the Court sustains an agency's determination "so long as such determinations are supported by substantial evidence, and are otherwise in accordance with law and … are consistent with the court's remand order." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 38 C.I.T. 727, 730 (2014); *see also MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *see also Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. United States*, No. 2020-2014, 2021 U.S. App. LEXIS 21386, at *16 (Fed. Cir. July 20, 2021) ("Reasonable minds may differ on the outcome, but 'a determination does not fail for lack of substantial evidence on that account.'") (citation omitted). Rather, the agency's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *see also Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1287 (Ct. Int'l Trade 2009). Accordingly, "the Court will not disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." *Shandong Huarong Gen. Corp. v. United States*, 159 F. Supp. 2d 714, 718

(Ct. Int'l Trade 2001); *see also Goldlink Industries Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) ("{T}he Court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (citations and internal quotation marks omitted).

## IV. ARGUMENT

### A. CBP'S REMAND DETERMINATION COMPLIES WITH THE COURT'S REMAND ORDER

CBP's evasion determination was remanded for further proceedings upon the Defendant's motion for voluntary remand "to give {CBP} the opportunity to reconsider or further explain its evasion determination in light of a recent court decision issued by the Federal Circuit in *Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023) relative to the treatment of confidential information." ECF No. 62.

In *Royal Brush*, the Federal Circuit held that there "is no legitimate government interest {} in refusing to provide confidential business information" when any such "concerns about the necessity of secrecy can be alleviated by issuing a protective order." *Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th at 1250, 1259 (Fed. Cir. 2023). The Federal Circuit found that a failure to provide confidential information cannot be protected by the Trade Secrets Act, 18 U.S.C. § 1905, because "that release is required as a matter of constitutional due process." *Id*. at 1260. The Federal Circuit noted that CBP has the "inherent authority to issue protective orders" and that there would be "no risk" to "narrowly releasing the information" to the plaintiffs. *Id*. at 1261. The Federal Circuit found that the verification report in the underlying

proceeding contained new factual information that warranted a right to rebuttal for the parties, consistent with the CBP's regulations. *Id.* at 1262-63; *see also* 19 C.F.R. § 165.23(c)(1).

On October 20, 2023, the Court ordered CBP to "correct any errors required by *Royal Brush*; and the plaintiffs may make any arguments they wish about what *Royal Brush*, due process generally, or Customs' regulations require." Appx10.

During the remand proceeding, consistent with the Court's order, CBP: (1) requested that the Defendant-Intervenor place revised public versions, including public summaries of business confidential documents, on the administrative record; (2) provided access to business confidential information contained in the administrative record that was not previously made available to the parties; and (3) provided the parties an opportunity to submit rebuttal information to the previously withheld business confidential information and make arguments. Appx90904.

Thus, in the remand proceeding, CBP addressed the concerns raised in *Royal Brush* by providing the parties access to the business confidential information previously withheld and allowing the parties to submit rebuttal factual information and arguments addressing that confidential information. The Court should find that CBP has complied with the Court's Remand Order in this proceeding.

### B. CBP'S REMAND REDETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

In the remand redetermination, CBP has continued to find, after reviewing the information placed on the administrative record, that substantial evidence of evasion exists. Appx90904.

The information placed on the record throughout the investigation and the remand proceeding indeed supports this determination. The EAPA statute defines "evasion" as:

> {E}ntering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

19 U.S.C. § 1517(a)(5). No one disputes that the glycine the Plaintiffs imported is covered merchandise within the meaning of the statute. 19 U.S.C. § 1517(a)(3).

CBP's affirmative evasion determination during the original investigation and the remand proceeding primarily relied on two fundamental findings: (1) PTNNI was incapable of producing glycine during the period it claims it had the capacity to do so; and (2) the origin of the glycine PTNNI did not produce but shipped to the United States is Chinese. *See*, *e.g.*, Appx90029 and Appx90299. Both findings are supported by substantial evidence and should be upheld here.

*a. PTNNI Was Not Capable of Producing the Glycine It Shipped to the United States During the Investigation Period*

The underlying administrative record shows that PTNNI produced and shipped the following quantities of intermediate and finished glycine during the investigation period:

**[**

**]**

Appx89573. The administrative record contains evidence indicating that PTNNI did not have the capacity to produce the significant volumes of intermediate and finished glycine during the early stages of the investigation period.

First, the underlying administrative record shows that the PTNNI factory building was unfinished and incapable of production during a significant portion of the investigation period. The pictures taken from the website of the KNIC, where PTNNI's factory is located, showed that PTNNI's factory was incomplete as of December 2020, "with construction factory grounds substantially unpaved," and "construction equipment and detritus immediately outside the factory walls." Appx90299. The investigative report submitted as part of the initial allegation showed that, **[**

**]**. *Id*. The investigative report also contained **[**

**]**. *Id*. PTNNI itself reported that **[**

**]**.

*Id*. Based on these findings, CBP determined that it was "highly improbable that PTNNI's facility was operational as of the claimed production start date of October 2020" and, even if "operational, PTNNI's facility almost certainly could not have supported production of the glycine entered by the Importers into the United States between **[** **]**." Appx90300.

PUBLIC VERSION

In their brief, the Plaintiffs claim that in the December 2020 picture the "construction equipment can clearly be seen to be not on-site, but rather outside the factory walls." Plaintiffs' Brief at 22. This is not true. As shown in the image below, the picture of the PTNNI factory dated December 2020 shows that there were indeed ongoing construction activities on-site:

New Trend Group



Appx82389.

Further, the Plaintiffs attempt to downplay the significance of the findings in the investigative report submitted as part of the allegation, claiming that CBP's reliance on the evidence somehow fails to meet the substantial evidence standard. Plaintiffs' Brief at 23. As noted, the investigative report contained photographic evidence showing the ongoing construction activities at the PTNNI factory **[**

**]**. Appx80058. Interviews at or near the PTNNI facility further corroborated these findings regarding the ongoing construction activities and lack of any production as of **[** **]**: (1) **[**

**] (**Appx80061); (2) the **[**

**]** (Appx80062); (3) **[**

**] (**Appx80062); and (4) **[**

**]**. Appx80063. These interviews show PTNNI clearly was not capable of production as of October 2020, the claimed production start date, and not capable of production until at least **[** **]**.

Yet, PTNNI claims to have: (1) produced **[**

**]**; and (2) shipped **[** **]**. Appx89573. Given the record evidence, it is simply impossible for PTNNI to have produced and shipped this much glycine to the United States during a period when PTNNI did not have the production capacity to do so.

Second, CBP found significant discrepancies concerning PTNNI's methanol purchase and consumption rates to produce the claimed volume of glycine. *See*, *e.g.*, Appx90028 and Appx90300-90301. PTNNI itself reported a **[** **]** methanol consumption rate per kg of intermediate glycine. Appx90028 and Appx90300. CBP officials estimated **[** **]** kg of methanol would be needed to produce one kg of intermediate glycine, and the Defendant-Intervenor submitted evidence from an Indian producer showing a methanol consumption rate of

**[ ]** kg to produce one kg of intermediate glycine. *Id*. Based on the consumption rate reported by PTNNI itself, PTNNI would have needed **[ ]** kg of methanol to support its claimed production of **[ ]** kg of intermediate glycine. Appx90028. Yet, PTNNI sourced only **[ ]** kg of methanol during the reported period. *Id*.

The Plaintiffs argue that CBP discounted their evidence supporting their claim that they sourced sufficient volumes of methanol to support their claimed production. Plaintiffs' Brief at 25-28. Plaintiffs' arguments, however, do little to rebut the significant discrepancies CBP found during the investigation. For example, the Plaintiffs claim that PTNNI's use of a "combination of purchased and recycled methanol in its production" justifies the low volume of methanol purchases during the investigation period. *Id*. at 25-26. CBP's findings during verification, however, show that PTNNI's employees were unable and untrained to recycle a significant volume of methanol, if any. CBP found that the workers assigned to the methanol tower "could not explain the chemistry of methanol recycling." Appx89579. The "workers in PTNNI's methanol distillation tower control room did not know much about methanol recycling and did not have any controls for the tower except for an on/off switch, all indications that PTNNI could not really recycle methanol." Appx90029. Despite repeatedly asking PTNNI officials, the CBP verification team was not able to observe the steps of glycine production that consume methanol and were told that those production steps would take place in the evening. Appx89573. PTNNI also frequently stopped production during the investigation period.

These findings indicate that PTNNI was unable to recycle sufficient methanol to make up for the deficit amount because methanol "is a material recycled continuously during the MCAA glycine production process at a bulk glycine manufacturing facility," and that it is "impossible to

use recycled methanol to produce glycine in batches: If methanol recycling is stopped during glycine production, it would be out of balance within three hours." Appx89615. The Plaintiffs also failed to provide any meaningful information concerning the methanol recovery rate of PTNNI, even when given the opportunity on remand. Appx90930. Thus, CBP's findings concerning PTNNI's inability to recycle methanol is reasonable and should be upheld.

Additionally, the Plaintiffs claim that PTNNI's failure to produce the requested data somehow shifted the burden of proof from CBP to the Plaintiffs, contrary to *Rodriguez v. Dep't Veterans Affairs,* 8 F.4th 1290, 1300 (Fed. Cir. 2021). The Plaintiff's reliance on *Rodriguez* is misplaced here. The EAPA statute clearly states that CBP should make an evasion finding "based on substantial evidence." 19 U.S.C. § 1517(c)(1)(A). CBP officials reviewed the record evidence concerning PTNNI's methanol recovery rate and determined that its methanol purchase volume was not sufficient to support its claimed production volume. This finding is based on substantial evidence and should be upheld. Even if, *arguendo*, there was any inaccuracy concerning PTNNI's methanol recovery rate, it is a result of the failure of PTNNI and the Plaintiffs to create an accurate record during the investigation and remand proceeding. *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337-38 (Fed. Cir. 2016). CBP's reliance on the record evidence to find that PTNNI did not purchase sufficient methanol to support PTNNI's claimed production should thus be upheld by this Court.

Third, PTNNI's lack of sufficient production capacity during the investigation period is evinced by the lack of sufficient production personnel that it employed during the relevant period. CBP found significant discrepancies in the attendance records PTNNI provided during the investigation. Appx90030. PTNNI did not have any records of payments to its employees

between **[ ]**. *Id*. PTNNI stated previously that it used its Chinese and Thai employees to train the Indonesian employees in glycine production and that such training takes **[ ]**. Appx90301-90302. On **[ ]**, when PTNNI made its first glycine shipment to the Importers, "only **[ ]** Chinese workers and **[ ]** Thai workers had a valid Indonesian work visa." Appx9030. All Chinese workers "filled **[ ]** and did not appear to **[ ]**." *Id*. PTNNI also reported that **[ ]**. Appx90866. **[ ]**. *Id*. The evidence submitted by the Defendant-Intervenor, however, showed that it was impossible for these employees to enter Indonesia on the claimed dates because both the Indonesian and Chinese governments implemented significant COVID-19 travel restrictions during this period. *Id*. Hao Wang, the son of the president of the Newtrend Group, also confirmed that he could not travel to Indonesia until "just a few weeks before verification" in May 2022 due to COVID-19 restrictions. Appx90916-90917.

The evidence collected during the investigation and the remand proceeding indicates that PTNNI was incapable of producing glycine in meaningful volumes until at least **[ ]**. Yet, PTNNI claims to have: (1) produced **[ ]**; and (2) shipped **[ ]**. Appx89573. CBP's affirmative finding of evasion should be upheld because the evidence suggests to a reasonable mind that PTNNI could not have produced or shipped

significant amounts of glycine at a time when it did not have an operational glycine production facility, sufficiently trained employees, and/or sufficient volumes of raw materials to produce glycine.

*b. Substantial Evidence Supports the Finding that the Origin of the Glycine PTNNI did not Produce but Shipped to the United States is Chinese*

CBP's finding that the origin of the glycine PTNNI did not produce but shipped to the United States during the investigation period is Chinese is also supported by substantial evidence.

First, the administrative record shows that PTNNI officials told the Defendant-Intervenor's investigator that PTNNI **[** **]**. Appx90299 and Appx90934.

Second, China-based Newtrend Group officials and Newtrend Group-affiliated companies had significant, direct involvement in the operations of all the Plaintiffs and PTNNI. Newtrend USA and PTNNI are directly owned by the Newtrend Group. Appx90934. Hao Wang, the **[** **]** of the Newtrend Group president, is the CEO of Nutrawave. *Id*. **[** **]**, the president of the Newtrend Group and other Newtrend companies, lent Starille and Nutrawave significant loans on non-commercial terms with **[** **]**. Appx90033. And all the glycine imported by Starille and Nutrawave was subsequently sold to Newtrend USA **[** **]**. Appx90935.

Third, commercial trade data showing imports of Chinese glycine entering Indonesia support the finding that the origin of PTNNI's glycine is Chinese. **[** **]**, the primary supplier of PTNNI's **[**

**]** which has a history of receiving shipments on PTNNI's behalf, imported **[** **]** of **[** **]** from China into Indonesia between **[** **]**. Appx90914. **[** **]**. Appx90912. Notably, the amount of glycine sold by **[** **]** was significantly higher than the amount reported by the Plaintiffs during the investigation as part of the Newtrend Group's sales reconciliations, demonstrating the unreliability of the information reported by PTNNI. *Id*. The commercial trade data revealed a significant increase of glycine imports from China into the Indonesian port closest to PTNNI just before PTNNI began exporting glycine from Indonesia to the United States. Appx90934.

The record evidence, viewed in its entirety, shows that the origin of the glycine that PTNNI shipped to the United States is Chinese. As CBP correctly found in its initial determination, an entity engaged in evasion cannot be expected to document it blatantly. Appx90023. Newtrend Thailand stopped producing glycine in **[** **]**, and the Newtrend Group's **[** **]**. Appx90033. Newtrend Group officials and affiliates, who own and control PTNNI and Newtrend USA and were directly involved in the businesses of Starille and Nutrawave, orchestrated a transshipment scheme where PTNNI received shipments of glycine from China through various channels, including other Indonesian companies and PTNNI's suppliers, and shipped this glycine to the Plaintiffs in the United States mislabeled as Indonesian origin during the investigation period.

*c. The Court Should Uphold CBP's Remand Redetermination*

Under the substantial evidence standard, "{i}t is not for this court on appeal to reweigh the evidence or to reconsider questions of fact anew." *Skyview Cabinet USA, Inc. v. United States*, 2023 Ct. Intl. Trade LEXIS 95 at 26 (Ct. of Int'l Trade 2023) (quoting *Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube*, 975 F.2d 807, 815 (Fed. Cir. 1992). The Court "may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Goldlink Industries Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006).

Here, CBP conducted a detailed investigation into the evasion allegations against the Plaintiffs and PTNNI. As part of the investigation, CBP collected reams of evidence from all parties to the investigation and visited PTNNI on-site to verify the responses of the parties. The evidence collected throughout all phases of the investigation contains significant inconsistencies and discrepancies concerning PTNNI's capability to produce its claimed glycine volumes during the relevant period. The facts also suggest that the origin of the glycine PTNNI did not produce but shipped to the Plaintiffs is Chinese. CBP's weighing of the evidence collected throughout the investigation has been reasonable, and the Court should not substitute its judgment for that of the agency here. Because substantial evidence supports CBP's affirmative evasion finding, the Court should uphold CBP's remand redetermination.

**C. CBP Did Not Engage in *Post Hoc* Rationalization Contrary to *Regents***

The Plaintiffs also claim that CBP's remand redetermination is inconsistent with *Regents*, which restricts the agency from engaging in impermissible *post hoc* rationalization of

the underlying agency decision. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20-21 (2020); *see also* Plaintiffs' Brief at 3. The Defendant-Intervenor fully incorporates the Defendant's brief and restates that, because CBP reopened the record on remand and requested parties to submit new factual information and comments addressing the confidential record information, CBP's remand determination is a new agency action and is not bound by the limitations of *Regents*. When the agency takes this route, it is "not limited to its prior reasons but must comply with the procedural requirements for new agency action." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. at 21.

Even if, *arguendo*, the Court views CBP's remand redetermination as the first option detailed in *Regents*, which it is not, the Plaintiffs' argument that CBP engaged in *post hoc* rationalization of the decision on remand fails. The Plaintiffs' primary example supporting their *post hoc* rationalization argument is CBP's discussion of the company-specific import data from the Government of Indonesia covering the period between July 2020 to June 2022 that the Plaintiffs submitted on remand. Appx90597. In response to this new evidence submitted on remand, CBP stated that the record already contained a statement from the Indonesian government that there is no record of glycine imports by PTNNI. Appx90909. CBP also added that it did not find this document persuasive because "PTNNI's official import data is not definitive proof that PTNNI did not export Chinese-origin glycine to the Importers because import data specific to PTNNI would only include import shipments where PTNNI is the declared importer on Indonesian customs declarations." Appx90909 - Appx90910. In reference to its earlier findings, CBP stated that it found in the initial determination that "trading companies in Indonesia likely acted as importers for PTNNI and facilitated importation of vast

quantities of glycine into Indonesia on PTNNI's behalf without a single kilogram (kg) of glycine under PTNNI's name," and thus "this information did not persuade CBP to reverse its determination of evasion." Appx90910.

Referencing its earlier decision in the underlying investigation, CBP identified, *inter alia*, page 3 of the initial determination. Appx90909. On page 3, CBP recognized that it had reviewed and considered "trade data from the **[ ]**," found in Attachment 6 of the October 19, 2021 memorandum that CBP placed on the record. Appx90002. The document CBP referenced in the initial determination is a letter from the **[ ]**. Appx82509. The affirmative evasion determination shows that CBP considered this document in its analysis but, in weighing the evidence, continued to find evasion based on other evidence on the record. Appx90002. For example, in response to the Plaintiffs' arguments that none of the documents submitted to the agency showed purchases of Chinese glycine by PTNNI, CBP stated that "the absence of any documents describing merchandise PTNNI purchased as 'illegally transshipped Chinese glycine' does not establish there was no evasion." Appx90023. In the administrative review decision, ORR recognized that "the administrative record contains no direct evidence of PTNNI's having openly imported glycine from China into Indonesia." Appx90302. Yet, ORR concluded that there is "substantial evidence in the record to support a finding that PTNNI transshipped Chinese-origin glycine." Appx90302.

In short, during the investigation, CBP considered the fact that there was no direct evidence that PTNNI purchased or imported Chinese-origin glycine but, in weighing the record

evidence, still found that the origin of the glycine PTNNI could not have produced but shipped to the United States is Chinese. CBP's discussion of the new factual information that the Plaintiffs submitted on remand with reference to its findings in the underlying investigation is not a *post hoc* rationalization of the earlier decision; it is a discussion of why the new evidence submitted by the Plaintiffs, which is aimed at establishing the same assertion advanced by the Plaintiffs on remand — *i.e.*, there was no evidence of direct purchase or import by PTNNI — fails to rebut other evidence on the record showing evasion by PTNNI and the Plaintiffs.

## V. CONCLUSION

For these reasons, we respectfully request that the Court sustain CBP's affirmative evasion determination on remand and enter final judgment in favor of the United States.

Respectfully submitted,

/s/ David M. Schwartz
David M. Schwartz
Kerem Bilge
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C. 20036
202.263.4170
202.331.8330 (fax)
Email: David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC.*

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

NEWTREND USA CO., LTD., STARILLE, LTD., AND NUTRAWAVE CO., LTD.,

Plaintiffs,

v.

UNITED STATES,

Defendant,

and

DEER PARK GLYCINE, LLC,

Defendant-Intervenor.

**COURT NO. 22-347**

**PROPOSED JUDGMENT**

Upon consideration of the U.S. Customs and Border Protection's final results of redetermination pursuant to remand, Defendant's response in support thereto, Defendant-Intervenor's response thereto, and all other pertinent papers, it is hereby

**ORDERED** that the remand results are sustained in their entirety.

**SO ORDERED.**

______________________________
Stephen Alexander Vaden, Judge

Dated: ______________________________
New York, New York

**PUBLIC VERSION**

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 6,393 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ David M. Schwartz

David M. Schwartz
Kerem Bilge
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C. 20036
202.263.4170
202.331.8330 (fax)
Email: David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

**PUBLIC VERSION**

**PUBLIC CERTIFICATE OF SERVICE**

I hereby certify that copies of the attached document are being served by CM/ECF, on June 26, 2024, addressed to the following parties:

Kara M. Westercamp, Esq.
U.S. DEPARTMENT OF JUSTICE
Civil Division, Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-7571
Email: kara.m.westercamp@usdoj.gov

Nicolas Alexander Morales, Esq.
Jennifer L. Petelle, Esq.
U.S. CUSTOMS AND BORDER PROTECTION
Office of the General Counsel
1300 Pennsylvania Avenue, NW.
Washington, DC 20004
Tel: (202) 288-2396
Email: nicolas.a.morales@cbp.dhs.gov

*Representing the Defendant*

Richard P. Ferrin, Esq.
Carolyn Bethea Connolly, Esq.
Douglas John Heffner, Esq.
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, N.W. Washington, DC 20005
Tel: (202) 230-5803
Fax: (202) 639-9355
Email: richard.ferrin@faegredrinker.com

William Randolph Rucker, Esq.
FAEGRE DRINKER BIDDLE & REATH, LLP
320 South Canal Street, Suite 3300
Chicago, IL 60606-1698
Tel: (312) 569-1157
Email: randy.rucker@faegredrinker.com

Dorothy Alicia Hickok, Esq.
FAEGRE DRINKER BIDDLE & REATH, LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Tel: (215) 988-3364
Fax: (215) 988-2757
Email: alicia.hickok@faegredrinker.com

*Representing the Plaintiffs*

/s/ David M. Schwartz
David M. Schwartz
Kerem Bilge
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C. 20036
202.263.4170
202.331.8330 (fax)
Email: David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*