**PUBLIC VERSION**

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| NEWTREND USA CO., LTD., STARILLE, LTD., AND NUTRAWAVE CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br> and <br><br> DEER PARK GLYCINE, LLC, <br><br> Defendant-Intervenor. | COURT NO. 22-347 <br><br> PUBLIC VERSION <br><br> BRACKETED BUSINESS PROPRIETARY INFORMATION ("BPI") HAS BEEN REDACTED FROM PAGES i AND 1–7. |

**DEFENDANT-INTERVENOR DEER PARK GLYCINE, LLC'S
RESPONSE BRIEF IN SUPPORT
OF THE U.S. CUSTOMS AND BORDER PROTECTION REMAND REDETERMINATION**

David M. Schwartz
Kerem Bilge

**THOMPSON HINE LLP**

1919 M Street, N.W., Suite 700
Washington, DC 20036
(202) 263-4170
(202) 331-8330 (fax)
David.Schwartz@ThompsonHine.com
Kerem.Bilge@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

Dated: February 21, 2025

PUBLIC VERSION

**TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| I.  | INTRODUCTION ................................................................................................... | 1 |
| II. | CBP'S DETERMINATION REGARDING THE ORIGIN OF PTNNI'S GLYCINE IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND SHOULD BE UPHELD ................................. | 1 |
|     | A. CHINA-BASED NEWTREND GROUP EXERCISED CONTROL OVER PTNNI, THE IMPORTERS, AND THE SUPPLY CHAIN OF THE GLYCINE PURCHASED BY THE IMPORTERS ................................................................................. | 2 |
|     | B. PTNNI [                    ] ................................................................................. | 4 |
|     | C. COUNTRY-WIDE AND COMPANY-SPECIFIC DATA PROVIDE FURTHER SUPPORT FOR CBP'S REMAND DETERMINATION ........................................ | 6 |
|     | D. CBP'S DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE ..................... | 8 |

-ii-

**PUBLIC VERSION**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aluminum Extrusions Fair Trade Comm. v. United States*,
   714 F. Supp. 3d 1332 (Ct. of Int'l Trade 2024) ....................................................................... 3

*Consolidated Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ............................................................................................................. 9, 10

*Goldlink Industries Co. v. United States*,
   431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ............................................................................ 9

*Gov't of Argentina v. United States*,
   542 F. Supp. 3d 1380 (Ct. Int'l Trade 2021) ............................................................................ 8

*INS v. Elias-Zacarias*,
   502 U.S. 478 (1992) ................................................................................................................. 8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................................................................... 8

BRACKETED
BUSINESS PROPRIETARY INFORMATION ("BPI")
HAS BEEN REDACTED FROM PAGES i AND 1–7.

**PUBLIC VERSION**

## I. INTRODUCTION

Pursuant to the Court's order, Defendant-Intervenor Deer Park Glycine, LLC ("DPG") hereby submits its response to the opening brief of the Plaintiffs Newtrend USA Co. Ltd. ("Newtrend USA"), Starille Ltd. ("Starille"), and Nutrawave Co. Ltd. ("Nutrawave") (collectively "Importers" or "Plaintiffs") on whether substantial evidence supports the determination of U.S. Customs and Border Protection ("CBP") that glycine imported into the United States from Indonesia originated in China. ECF No. 122 ("Order"); ECF No. 125 ("Plaintiffs' Opening Brief"); *see also* Final Remand Redetermination, Jan. 18, 2024, ECF No. 73 ("Remand Results"). For the reasons detailed here, DPG respectfully requests that the Court sustain CBP's Remand Results and enter judgment for the United States.

## I. CBP'S DETERMINATION REGARDING THE ORIGIN OF PTNNI'S GLYCINE IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND SHOULD BE UPHELD

Essential to the issue under review here is CBP's finding that PT Newtrend Nutrition Ingredient ("PTNNI") did not produce all the glycine it sold to the Importers during the period of investigation ("POI"), which ran from June 29, 2020, through the pendency of the investigation. Appx90934 and Appx82531. CBP's conclusion regarding the true origin of the glycine that PTNNI sold during the POI directly stems from this finding and is further supported by substantial record evidence. On remand, CBP highlighted three pieces of record evidence showing that the glycine sold by PTNNI was Chinese in origin (Appx90934–90935): (1) evidence showing that China-based Newtrend Group had significant control over PTNNI and the Importers, and orchestrated all transactions in the Importers' glycine supply chain; (2) evidence showing that PTNNI officials **[** 

    **]**; and (3) company-specific and country-wide trade data supporting the Chinese origin of PTNNI's glycine. *Id.* As detailed here, CBP's determination is supported by substantial

PUBLIC VERSION

evidence, was affirmed twice so far by the agency — upon administrative review and on remand — and should be upheld by this Court.

### A.     China-based Newtrend Group Exercised Control Over PTNNI, the Importers, and the Supply Chain of the Glycine Purchased by the Importers

The China-based Newtrend Group directly owns both PTNNI and Newtrend USA, one of the Importers at issue. Appx90004 and Appx90021.  The evidence also shows that the China-based Newtrend Group had an "intertwined" relationship with both Nutrawave and Starille, the other allegedly non-affiliated Importers, and exercised significant control over the supply chain of the glycine purchased by these two allegedly non-affiliated Importers. Appx90033, Appx90303, and Appx90934.

The China-based Newtrend Group provided significant funding on non-commercial terms to Starille and Nutrawave to allow them to buy glycine from PTNNI. Appx90033 (finding that [                    ], the Newtrend Group president, and [                        ] lent Nutrawave and Starille [          ] and [             ], respectively, "with [

           ] for repayment, no written loan agreement, and [                    ]" and that

[             ] "clearly understood that this would allow Starille to purchase glycine from PTNNI."). Hao Wang, the [      ] of Newtrend Group's president, and [

                                              ], were CEOs of Nutrawave prior to and during the POI. Appx90934; *see also* Appx86669 (showing that [



                      ]).  Starille sold all its glycine purchased from PTNNI to [           ] at the direction of [                          ], the President of the China-based Newtrend Group.

- 2 -

**PUBLIC VERSION**

Appx90303 and Appx84856.  Starille did not even advertise its glycine. *Id*.; *see also* Appx84954. [                    ] recommended that Nutrawave sell its glycine to [            ]. Appx90005.  As a result, Nutrawave sold [      ] of the glycine it purchased from [      ] to [            ].  Appx84860.  Overall, Nutrawave sold [        ] of the glycine it purchased, directly or indirectly, from PTNNI to [            ].  [

].  Appx84699–Appx84700.  In short, [                    ], the President of the China-based Newtrend Group, orchestrated all transactions among the Importers involving PTNNI's glycine and ensured that the [

].  CBP concluded in its initial determination that the record evidence showed that "there is no large-scale supplier of glycine in Indonesia other than PTNNI," further supporting the finding that the glycine sold by PTNNI must have been made by the China-based Newtrend Group.  Appx90033.

Plaintiffs claim in their brief that the existence of affiliation between the Newtrend Group, PTNNI, and the Importers does not amount to substantial evidence of evasion.[1]

---

[1] DPG notes that Plaintiffs' misplaced reliance on *Aluminum Extrusions Fair Trade Comm. v. United States* should be rejected. Plaintiffs' Opening Brief at 10.  In *Aluminum Extrusions Fair Trade Comm.*, this Court affirmed CBP's negative evasion determination on administrative review based on evidence showing significant and sufficient manufacturing of aluminum extrusions by Kingtom in the Dominican Republic and that Kingtom was located in a free trade zone monitored by the Dominican government. *Aluminum Extrusions Fair Trade Comm. v. United States*, 714 F. Supp. 3d 1332, 1351 (Ct. of Int'l Trade 2024).  Here, CBP found substantial evidence showing that PTNNI did not have sufficient manufacturing capability to produce the glycine it sold to the Importers during the POI. Appx90934.  Further, PTNNI is not located in a free trade zone and its operations are not monitored by government officials on a daily basis.  PTNNI itself stated that it imported goods through trading companies. Appx90011.  The evidence

PUBLIC VERSION

Plaintiffs' Opening Brief at 10.  As explained by CBP in its initial determination, however, the Newtrend Group's significant influence on all parties involved and the ultimate destination of the glycine purchased by the Importers shows that the glycine was produced by the Newtrend Group itself. Appx90033 ("It is unlikely that, the Newtrend Group would provide loans, [                                    ], and find customers for a competitor's glycine. Further, Newtrend USA is a wholly owned subsidiary of the Group and would likely not source glycine from a competitor.").  The record evidence also establishes that the only location where the Newtrend Group could have produced the glycine sold by PTNNI was China. Appx90033. The Newtrend Group, "the largest glycine producer in the world with operation{s} in China and Indonesia," produced glycine only in China during the POI. Appx89570. While the Newtrend Group had a glycine facility in Thailand, that facility "ceased production of glycine in [            ]." Appx90008.  In contrast, the Newtrend Group's affiliates continued to produce and sell glycine in China during the POI. Appx90033; *see also* Appx86360–Appx86401 (Sales Reconciliations of **[**

]).

    **B.**    **PTNNI [                                                              ]**

The administrative record contains evidence of **[**

]**.**

Appx90033; Appx90934.  This evidence is significant because it shows that, **[**

---

of affiliation among the Newtrend Group, PTNNI, and the Importers and the Newtrend Group's significant influence on the supply chain of the product are thus critical to the question of the origin of the glycine PTNNI did not produce during the POI.

<u>**PUBLIC VERSION**</u>

],[2] PTNNI was [

].

Appx80062. Between [



]. *Id*.; *see also* Appx89570 (showing that [

]);

Appx84038 (PTNNI Sales Reconciliation showing that, [



]); *see* Appx 86347

(Reconciliation of 2020 PTNNI Exports to Indonesian Export Statistics).  The only other PTNNI

transaction [                                                                               ].  Appx84038,

Appx86347, and Appx89574.  The DPG investigator's report establishes, at the very least, that

[

].

When this evidence is considered with evidence showing that the glycine sold by PTNNI was

likely made by the China-based Newtrend Group, which only produced glycine in China during

the relevant period, the DPG investigator's report provides substantial support for CBP's finding

that the glycine PTNNI sold to the Importers was Chinese in origin.

---

[2] DPG notes that Plaintiffs' arguments concerning the date of the on-site visit should be rejected; the report states that the "field visit" occurred on [            ]. Appx80052.

PUBLIC VERSION

### C. Country-Wide and Company-Specific Data Provide Further Support for CBP's Remand Determination

The administrative record contains both country-wide and company-specific trade data further supporting CBP's finding regarding the origin of PTNNI's glycine.

The record contains Panjiva commercial trade data[3] showing that **[**

**]**. Appx90588. Similarly, the administrative record contains evidence showing that **[              ]**, PTNNI's **[                    ]**, received a total of **[**

**]**. Appx90914 and Appx90586. CBP reasonably determined that these two pieces of evidence further support CBP's evasion determination. First, due to the discrepancies between the Panjiva commercial trade data and the records provided by PTNNI concerning the sales of **[            ]**, CBP reasonably determined that the sales reconciliations voluntarily submitted by PTNNI were unreliable and incomplete. Appx90915. Second, given PTNNI's own statements on the record that "it imported goods from **[        ]** through a trading company in **[      ]**," CBP reasonably determined that the significant volume of **[                                    ]** further supported its conclusion regarding the origin of the glycine that PTNNI sold during the POI. Appx90918; Appx90011.

---

[3] DPG notes that this Court should reject Plaintiffs' baseless claim that the Panjiva data are unreliable. Plaintiffs' Opening Brief at 9. Concerning the Panjiva data, CBP on remand only stated that the port of lading may not be dispositive as to the origin of the product. Appx90913. Nothing on the record suggests that Panjiva's origin information is inaccurate.

**PUBLIC VERSION**

Country-wide import data available on the administrative record provided further support for CBP's finding regarding the origin of the glycine sold by PTNNI during the POI. As CBP found on remand, the country-wide data show that China was the largest source country for Indonesia's glycine imports. Appx90935. The country-wide import data show that the total volume of amino acids, including glycine, imported into Indonesia in 2021 under HS code 2922.49 was 7,801,212 kg. Appx90582. China represented 80.52%, or 6,281,361 kg of this volume. *Id*. The volume of amino acids from non-Chinese sources in 2021 amounted to only 1.5 million kg. *Id*. The administrative record thus supports CBP's finding that "China was the largest source country for Indonesia's glycine imports" by a significant margin. Appx90935.

The evidence also shows that PTNNI shipped [

]. Appx89573. The country-wide trade data further support CBP's finding that the glycine sold by PTNNI to the Importers was Chinese in origin because the data show that — even based on unlikely assumptions that all products imported under HS 292249 in 2021 were glycine and PTNNI sourced all non-Chinese glycine imported into Indonesia in 2021 — the volume would likely not be sufficient to represent the [

]. Appx89573. In contrast, 6,281,361 kg of products imported from China into Indonesia under HS code 292249 is more than sufficient to represent the volume that PTNNI did not produce but sold to its customers in 2021. CBP identified even more record evidence indicating increasing quantities of amino acid imports, including glycine, into the Indonesian port closest to PTNNI's facility just before PTNNI began exporting glycine from Indonesia to the United States. Appx90935. In short, the country-wide

PUBLIC VERSION

data support CBP's finding regarding the Chinese origin of the glycine sold by PTNNI during the POI.[4]

### D. CBP's Determination Is Supported by Substantial Evidence

The evidence underlying CBP's determination regarding the origin of the glycine sold by PTNNI to the Importers should be considered as sufficient based on the totality of evidence on the record. Plaintiffs' mere disagreement with CBP's conclusions or weighing of the record evidence should not be a basis to overturn CBP's affirmative evasion determination. G*ov't of Argentina v. United States*, 542 F. Supp. 3d 1380, 1395 (Ct. Int'l Trade 2021). When the Court is asked to determine whether CBP's evasion finding is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the Court should not substitute its judgment for that of the agency and should not reverse CBP's evasion finding unless it finds record evidence "so compelling that no reasonable factfinder" could reach the same conclusion that CBP did. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."). This is so even when the Court would "have made a different choice had

---

[4] Plaintiffs' argument is based on an erroneous interpretation of the country-wide import data. Plaintiffs' Opening Brief at 6 (referencing Appx89670-89708). The provided figures strongly indicate that they show the value (not the volume/quantity) of imports classified under HS 2922.49.00. *See* Plaintiffs' Opening Brief at 6 (claiming that the total volume of imports from China in 2020 and 2021 was 20,543,021 and 27,983,065); *cf.* Appx90582 (UN Comtrade Data showing the total volume of imports of products classified under 292249 into Indonesia in 2020 and 2021 was 7,214,754.76 kg and 7,801,212.09 kg, respectively) and Appx9908 (showing the volume of HS 2922.49 imports from China were 4,742,367 kg and 6,204,461 kg in 2020 and 2021, respectively). The data provided by Plaintiffs have no bearing on whether there was sufficient non-Chinese glycine in Indonesia at the time to make up for the deficit amount not produced by PTNNI.

**PUBLIC VERSION**

the matter been before it de novo." *Goldlink Industries Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006).

CBP's conclusion regarding the origin of the product PTNNI sold to the United States is reasonable and supported by substantial evidence. As CBP explained, the "absence of any documents describing merchandise PTNNI purchased as 'illegally Chinese glycine' does not establish there was no evasion" and "CBP would not expect any entity engaged in evasion to document it so blatantly." Appx90023. The "substantial evidence" standard does not require CBP to find direct evidence showing PTNNI purchased Chinese-origin glycine from the Newtrend Group and sold the same glycine to the Importers during the POI. Under the substantial evidence standard, CBP's finding should be upheld so long as the evidence underlying the conclusion might be accepted by a reasonable mind as adequate, even if there is some evidence that detracts from the agency's conclusion. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion".).

After a detailed, fact-intensive analysis, CBP carefully considered all evidence available to it and determined, based on the totality of evidence, that PTNNI was not capable of producing the glycine it shipped to the United States during the POI. Appx90034; Appx90936. Then, CBP conducted a detailed, fact-intensive analysis as to the origin of the glycine that PTNNI did not produce during the POI. Appx90033. Given the relationship between the China-based Newtrend Group, PTNNI, and the Importers, and the Newtrend Group's significant influence on the ultimate destination of glycine, CBP reasonably determined that the China-based Newtrend

<u>**PUBLIC VERSION**</u>

Group produced the glycine that PTNNI sold to the Importers during the POI. Appx90033; Appx90934.  CBP further determined that the China-based Newtrend Group produced the glycine in China because the group did not have glycine production in any other country at the time. *Id*.  Additional record evidence, including DPG's private investigation report and commercial trade data, further supported this conclusion.  Appx90033 and Appx90935.  When warranted, CBP addressed record evidence detracting from its conclusions. *See, e.g.,* Appx90933 (discussing the Indonesian government's trade data).  In short, CBP satisfied its statutory mandate and made a final affirmative evasion determination based on substantial evidence.  There is simply no reason for this Court to overturn the agency's highly fact-intensive determination supported by substantial evidence.

For these reasons, we respectfully request that the Court sustain CBP's final affirmative evasion determination on remand and enter final judgment in favor of the United States.

                Respectfully submitted,

                <u>/s/ David M. Schwartz</u>
                David M. Schwartz
                Kerem Bilge
                THOMPSON HINE LLP
                1919 M Street, N.W., Suite 700
                Washington, D.C. 20036
                202.263.4170
                202.331.8330 (fax)
                Email:  <u>David.Schwartz@ThompsonHine.com</u>

                *Counsel to Deer Park Glycine, LLC*

February 21, 2025

# UNITED STATES COURT OF INTERNATIONAL TRADE
# BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| NEWTREND USA CO., LTD., STARILLE, LTD., AND NUTRAWAVE CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br> and <br><br> DEER PARK GLYCINE, LLC, <br><br> Defendant-Intervenor. | COURT NO. 22-347 |

## PROPOSED JUDGMENT

Upon consideration of the U.S. Customs and Border Protection's final results of redetermination pursuant to remand, Defendant's response in support thereto, Defendant-Intervenor's response thereto, and all other pertinent papers, it is hereby

**ORDERED** that the remand results are sustained in their entirety.

**SO ORDERED.**

_____
Stephen Alexander Vaden, Judge

Dated: _____
   New York, New York

**PUBLIC VERSION**

**CERTIFICATE OF COMPLIANCE**

     I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 2,949 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ David M. Schwartz

David M. Schwartz
Kerem Bilge
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C. 20036
202.263.4170
202.331.8330 (fax)
Email:  David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

February 21, 2025